No. 95,049

STATE OF KANSAS, *Appellee*, v. ANTHONY L. JEFFERSON, *Appellant*.

(194 P.3d 557)

Opinion filed October 17, 2008.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Phill Kline*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: The State petitions for our review of the Court of Appeals' reversal of defendant Anthony Jefferson's conviction of aggravated battery. We examine one issue: Whether a refusal to testify by State witness Jesse Villa made him unavailable, thus permitting admission of his preliminary hearing testimony at Jefferson's trial.

## Factual and Procedural Background

Jesse Gomez awoke early on February 1, 2004, to the sound of yelling and then a gunshot. A few moments later, there was a knock at his door. Jesse Villa, Gomez' neighbor, was standing on Gomez' porch. Villa was bleeding from a wound in his ear and asked Gomez to call 911. Villa was taken to the Hutchinson Hospital.

Jessica Vigil was Villa's old girlfriend. She had begun dating Jefferson and was with him on the morning Villa appeared on Gomez' porch. According to Vigil, Jefferson was jealous of her relationship with Villa, and he decided he was going to "show [Vigil] what would happen to anybody else that [she] would be with." He dialed Villa's number, gave the phone to Vigil, and directed her to have Villa meet her in an alley by a certain church near Gomez' house.

Vigil would testify that Jefferson drove a red Ford Fiesta to the alley, hitting Vigil along the way. Jefferson also pulled out a gun and told Vigil that she was going to have to shoot Villa. Jefferson then took the gun back, thinking aloud that Vigil probably would shoot him instead. He then began beating her with the gun. When Jefferson and Vigil arrived at the meeting point, Villa initially was nowhere to be seen. As Jefferson drove down the alley, accusing Vigil of setting him up, he and Vigil saw Villa.

Jefferson directed Vigil to get out of the car and call to Villa, which she did. When Villa approached, according to Vigil, Jefferson brandished the gun and demanded Villa empty his pockets, asking if Villa knew why he was there. Villa said he did not. Jefferson then asked Vigil if Villa and she had been together; when Vigil said yes, Jefferson told Villa that was why he was there. Jefferson then grabbed Villa; they wrestled; Jefferson tried to force Villa into the car; and Villa ended up with his hands on the back of the Fiesta's hatchback, with Jefferson pointing the gun at his head.

At this point, Vigil said, she turned her head because she did not want to see Villa die. She heard a gunshot, and she jumped into the driver's seat of the car. She did not drive away because she did not know how to drive the Fiesta's stick shift. Jefferson then joined her in the car. He told her Villa was dead, got angry that she could not drive, and threatened to kill her too. After Vigil's

attempt to operate the car was unsuccessful, leading to a minor accident, Jefferson switched seats with her and drove away.

After the crime had been reported, officers discovered blood and fresh tire tracks at the scene. They also found a pocketknife but no gun and no bullet. The knife had no blood on it.

Officers testified that they contacted Vigil for an interview about a week after the incident. She was very nervous, had a black eye, and had bruises and lumps on her head and face. Officers did not want to scare her away, and they did not push her to make any statements at that time. Vigil voluntarily came forward about a week later—nearly 2 weeks after the crime—and implicated Jefferson.

Villa testified at Jefferson's preliminary hearing and was subpoenaed to testify at trial. By that time, he was incarcerated; and, although he appeared, he refused to testify. After voir dire but before the jury was sworn in, the district judge appointed counsel for Villa. Villa claimed no privilege, and he maintained that he had not been threatened; he said he was not afraid to testify; he simply refused to do so. The district judge held him in contempt and sentenced him to 6 months in the Reno County jail.

The State then asserted that it could admit Villa's testimony from the preliminary hearing. In its view, the defense had an opportunity to cross-examine Villa at the preliminary hearing, which eliminated any Confrontation Clause problem, and Villa was unavailable. The defense argued that a refusal to testify does not make a witness unavailable under Kansas hearsay statutes. It also challenged the sufficiency of the earlier cross-examination opportunity because Jefferson's attorney at the time of the preliminary hearing had a conflict. The public defender who had represented Jefferson at the preliminary hearing withdrew between the hearing and trial; although he had been vaguely aware at the time of the preliminary hearing that another lawyer in his office was representing Villa in a different case, he later concluded that the representation required Jefferson to have a different lawyer.

The district judge ruled in favor of the State and admitted Villa's preliminary hearing testimony at trial. Villa's version of events was that he got a call to meet Vigil in the alley by the church. She

arrived with Jefferson as he was walking away. When she called to him and he approached, Jefferson was standing outside the car with his back to Villa. Jefferson then turned around, faced Villa, and asked Villa if he knew him. Villa did not. Jefferson pulled a gun, pointed it at Villa, and ordered Villa to get his hands out of his pockets. Then, when Villa was positioned against Jefferson's car, Jefferson asked if Villa had any money or drugs and patted him down. Jefferson then hit Villa a couple of times with the gun and fired it. Villa heard Jefferson tell Vigil to get into the car and drive. The two men wrestled, and Jefferson tried to pull Villa into the car. Villa managed to get away and ran to Gomez' house. Gomez called police.

As for Vigil, in addition to testifying about her version of events, she said at trial that she had been threatened not to testify against Jefferson and that she was afraid of him. A former cellmate of Jefferson testified to Jefferson's unsuccessful effort to employ the cellmate to support an invented alibi.

The defense introduced testimony from the responding paramedic who described Villa's injuries and his initial refusal of treatment. In addition, a friend of Jefferson testified that he had driven Jefferson from Newton to Hutchinson on the night of the crime because Jefferson's car, a blue Corsica, had broken down.

Jefferson testified on his own behalf. His version of events began with Vigil calling him several times, claiming to have been beaten. According to him, she asked Jefferson what he was going to do about it and said she would set up a meeting with Villa. After Jefferson's friend drove him from Newton to Hutchinson, he met Villa in the alley, where Vigil had arranged for the two men to fight. Jefferson testified that he did not own a gun and that he brought no weapons to the meeting. Jefferson said that he asked Villa if he knew why he was there, and Villa said yes. The two then exchanged words and scuffled. Jefferson wrestled Villa to the ground. At some point, Villa dropped a knife. After Jefferson let Villa up from the ground, Villa pulled a gun from under his coat. The men wrestled again, and the gun went off. Jefferson maintained that he did not go to the meeting with the intent to kill Villa. He also maintained that, although he had punched Villa a few times

during the first part of their fight, he never gained possession of the gun. After Jefferson fled on foot, he said, he later met with Vigil, saw her injuries, and told her what had happened.

On cross-examination, the prosecutor succeeded in pointing out inconsistencies between Jefferson's account of events at trial and his earlier statements to law enforcement.

During deliberations, the jury sent out the question: "Why did Jess[e] Villa not testify in person in Case No. 04 CR 203?" In response and without objection, the district judge directed the jury to refer to instructions on avoidance of inferences drawn from evidentiary rulings, on the jury's responsibility to determine the weight and credibility of testimony and to use common sense, and on the standards governing weighing of witness testimony given at another time and place. The jury ultimately convicted on aggravated battery but acquitted Jefferson of several other charges—attempted first-degree murder, attempted aggravated robbery, attempted kidnapping, and criminal possession of a firearm.

Jefferson appealed on several issues but dropped his challenge to the district judge's decision on the Confrontation Clause question. Our Court of Appeals reversed on the issue of Villa's unavailability, ruling that his mere refusal to testify did not make him "unavailable as a witness" as that phrase is used in K.S.A. 60-460 and defined in K.S.A. 60-459(g), and vacated Jefferson's conviction. *State v. Jefferson*, No. 95,049, unpublished opinion filed April 6, 2007, slip op. at 4-6 (citing *State v. Johnson-Howell*, 255 Kan. 928, 940, 881 P.3d 1288 [1994]). We accepted the State's petition for review on this issue.

### Standard of Review

The State invokes an abuse of discretion standard of review. Although this court has, on numerous occasions, stated that "the finding of unavailability of a witness is entirely within the court's discretion" see, *e.g.*, *State v. Ransom*, 239 Kan. 594, 598, 722 P.2d 540 (1986), the situations prompting these statements have tended to involve a district judge's decision on whether a party's efforts to secure a witness' presence were adequate. See *State v. Stano*, 284 Kan. 126, 140-45, 159 P.3d 931 (2007) (district court did not abuse

discretion when witness could not be located for trial); *State v. Young*, 277 Kan. 588, 598, 87 P.3d 308 (2004) (State showed reasonable diligence in effort to bring witness to testify live at trial); *State v. Watie, Heard and Heard*, 223 Kan. 337, 340-41, 574 P.2d 1368 (1978) (within court's discretion to determine unavailability as long as prosecutor makes good-faith effort to obtain witness' presence at trial); *State v. Mims*, 222 Kan. 335, 338, 564 P.2d 531 (1977) (sufficiency of proof of unavailability of witness within discretion of district judge; when defendant not reasonably diligent in securing witness' presence, no abuse of discretion to disallow admission of testimony from earlier trial); *State v. Steward*, 219 Kan. 256, 263-65, 547 P.2d 773 (1976) (no abuse of discretion in allowing admission of testimony from earlier trial of same action, when witness unavailable because of advanced pregnancy); *State v. Washington*, 206 Kan. 336, 338, 479 P.2d 833 (1971) (no abuse of discretion to permit admission of preliminary hearing testimony when good-faith, but unsuccessful effort made to locate witness).

In contrast, the facts before us are not subject to interpretation or weighing that could affect the reasonableness of a district judge's application of the hearsay statutes. See *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006) (no abuse of discretion unless no reasonable person would take the position of the judge). Here, neither Villa's presence nor the State's efforts to secure it were the problem. The problem was his flat refusal to testify, even in the face of a contempt citation and its resulting sanction of 6 months in jail.

Furthermore, we have recently clarified that rules governing admission and exclusion of evidence may be applied either as a matter of law or in the exercise of a district judge's discretion, depending on the contours of the rule in question. The admission of hearsay evidence such as that at issue here requires evaluation of statutory applicability, including, first, interpretation of the statute's language. Interpretation of a statute raises a question of law, reviewable de novo on appeal. See *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

We also observe that the issue, as framed by the parties, requires us to consider the continuing viability of an earlier holding from this court. This exercise also raises a question of law reviewable de

novo. See *Johnson v. Brooks Plumbing*, 281 Kan. 1212, Syl. ¶ 2, 135 P.3d 1203 (2006).

*Unavailability*

There is no dispute that Villa's preliminary hearing testimony was hearsay. K.S.A. 60-460 sets out exceptions to the general rule that hearsay is inadmissible. K.S.A. 60-460(c) creates an exception for depositions and prior testimony:

"Subject to the same limitations and objections as though the declarant were testifying in person, (1) testimony in the form of a deposition taken in compliance with the law of this state for use as testimony in the trial of the action in which offered or (2) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action, or in a deposition taken in compliance with law for use as testimony in the trial of another action, *when* . . . (B) the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered, but the provisions of this subsection (c) shall not apply in criminal actions if it denies to the accused the right to meet the witness face to face." (Emphasis added.)

The legislature has defined witness unavailability in K.S.A. 60-459(g), which reads:

" 'Unavailable as a witness' includes situations where the witness is (1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant, or (2) disqualified from testifying to the matter, or (3) unable to be present or to testify at the hearing because of death or then existing physical or mental illness, or (4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts.

"But a witness is not unavailable (1) if the judge finds that his or her exemption, disqualification, inability or absence is due to procurement or wrongdoing of the proponent of his or her statement for the purpose of preventing the witness from attending or testifying, or to the culpable neglect of such party, or (2) if unavailability is claimed under clause (4) of the preceding paragraph and the judge finds that the deposition of the declarant could have been taken by the exercise of reasonable diligence and without undue hardship, and that the probable importance of the testimony is such as to justify the expense of taking such deposition."

As our Court of Appeals recognized and Jefferson has emphasized, in *Johnson-Howell*, 255 Kan. at 940, this court ruled that a

refusal to testify did not render a witness unavailable. The State now argues that *Johnson-Howell* misinterpreted the statutory definition of unavailability and that we should use this case to correct its legal error.

In *Johnson-Howell*, defendant Faye Johnson-Howell was tried and convicted of first-degree murder on an aiding and abetting theory and conspiracy to commit the murder of her estranged husband. Her coconspirator, LaJuan Clemons, had waived his privilege against self-incrimination under the Fifth Amendment to the United States Constitution by testifying at his own trial for the same crime; had been convicted of first-degree murder; and was called as a witness for the State in Johnson-Howell's case. Outside the presence of the jury, Clemons acknowledged he would be held in contempt if he refused to answer questions. When he refused, the court held him in contempt. However, in order to preserve defendant's confrontation rights, the court withdrew the contempt order and decided to allow the State to examine him before the jury. Clemons was sworn in. When he refused to answer questions, he was declared hostile, and the State asked leading questions, which Clemons still refused to answer. Because there was no direct examination, there was no cross-examination. Clemons was held in contempt

Over defendant's hearsay objection, the State was permitted to introduce Clemons' statements to police following the murder. On appeal, defendant asserted, *inter alia*, a violation of her Sixth Amendment right to confrontation. In addition, she argued that the statements were not admissible under any of the statutory hearsay exceptions.

In its discussion of the challenge to the admission of Clemons' statements, this court stated simply that Clemons' statements were not admissible under K.S.A. 60-460(d)(3)—which permits introduction of an out-of-court statement by an unavailable witness if the statement was made "by the declarant at a time when the matter had been recently perceived . . . and while the declarant's recollection was clear and [the statement] was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort"—because Clemons' circumstances did not

match any of the situations of an unavailable witness listed in K.S.A. 60-459(g). *Johnson-Howell*, 255 Kan. at 936-37. In this way, although the *Johnson-Howell* opinion did not state that the list of circumstances in K.S.A. 60-459(g) was exclusive, its approach appeared to assume as much.

The *Johnson-Howell* court also stated that "[a] witness' refusal to testify in a criminal trial is not a recognized ground for unavailability of the witness in this state," a sentence picked up and repeated in its syllabus. 255 Kan. 928, Syl. ¶ 6 (text of opinion, 255 Kan. at 940, citing *State v. Lomax & Williams*, 227 Kan. 651, 660, 608 P.2d 959 [1980]). However, we consider it significant that this statement appears only in the section of the opinion discussing Johnson-Howell's constitutional argument, *i.e.*, that admission of Clemons' statements to police violated the Confrontation Clause because Johnson-Howell had been provided no opportunity for cross-examination. *Johnson-Howell*, 255 Kan. at 938-44. Likewise, the case *Johnson-Howell* cited for this sentence dealt primarily with a defendant's right to confront witnesses under the federal and state Constitutions. In that case, *Lomax & Williams*, 227 Kan. at 658, this court made only a passing reference to K.S.A. 60-460, and interpretation of the Kansas statutes governing admission of out-of-court statements by an unavailable witness bore no analytical weight in reaching the holding on the right of confrontation. 227 Kan. at 655-62.

Ultimately, in *Johnson-Howell*, in addition to ruling Clemons' statements inadmissible under the hearsay statutes, the court ruled that the defendant's lack of opportunity to cross-examine Clemons violated the right of confrontation. 255 Kan. at 944. Still, the defendant's convictions were affirmed, because the court viewed the statutory and constitutional errors as harmless. 255 Kan. at 944-45.

Having recognized a certain internal weakness in the *Johnson-Howell* decision, we also note that it was in conflict with earlier precedent from this court. In *State v. Terry*, 202 Kan. 599, 451 P.2d 211 (1969), two witnesses who had previously testified against the defendant at his preliminary hearing refused to testify at trial, despite a grant of immunity. Under those circumstances, their testimony was treated as "just as 'unavailable' as though [their] phys-

ical presence could not have been procured." 202 Kan. at 603. We concluded that the unavailability requirement had been met, as it did not depend completely on the physical presence or absence of a witness but on the inaccessibility of his or her testimony. 202 Kan. at 602-603. The court specifically declined to hold that K.S.A. 60-459 or K.S.A. 60-460 required a different result, *Terry*, 202 Kan. at 603, and this holding of *Terry* was not overruled by *Johnson-Howell*.

In this case, Villa's circumstances, like Clemons' in *Johnson-Howell*, did not fit neatly under any of those listed in K.S.A. 60-459(g). There was no Fifth Amendment or other privilege that exempted him from testifying; he was not disqualified from testifying in any way; he was not unable to be present because of death or physical or mental illness; he was not beyond the jurisdiction of the court; and he was not "absent from the place of hearing" because the State did not know or could not know, with the exercise of diligence, his whereabouts. See K.S.A. 60-459(g). If we treat the list of unavailable witness situations in K.S.A. 60-459(g) as exclusive, then Villa's preliminary hearing testimony should not have been admitted under K.S.A. 60-460(c)(2)(B).

The State urges us to treat the K.S.A. 60-459(g) list as exemplary rather than exclusive. We agree with its position on this point for several reasons.

First, we examine the text of the statute, which introduces the list in this way: " 'Unavailable' as a witness *includes* situations where a witness is . . . ." (Emphasis added.) K.S.A. 60-459(g). This plain language means that the classification "unavailable as a witness" encompasses the situations listed but could also encompass others. The State is correct that this reading is consistent with our recent decision in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), in which we interpreted the plain language of the list in K.S.A. 60-455 of material facts subject to proof by introduction of prior convictions or civil wrongs preceded by the word "including" as being exemplary rather than exclusive. 282 Kan. at 52-53 (material facts in list are *among* possibilities, not *only* possibilities). Jefferson's attempt to distinguish *Gunby* is not persuasive.

A second textual point supports the State as well. The legislature has demonstrated that it is fully capable of making a statutory list exclusive when it desires to do so by using the introductory phrase "includes *only*." (Emphasis added.) See K.S.A. 13-13a04(a); K.S.A. 20-2916(a); K.S.A. 46-282; K.S.A. 59-2246; K.S.A. 65-1,172(d); K.S.A. 74-4954b(4); K.S.A. 74-4986g(c); K.S.A. 79-32,175(d).

Having determined that the plain language of K.S.A. 60-459(g) permits situations other than those listed to equal witness unavailability, we disregard the *Johnson-Howell* decision's apparent assumption to the contrary. It does not control us here because it is analytically flawed; it fails to acknowledge the existence of contrary precedent; and its syllabus taken from discussion of a constitutional point has been misread as a statutory interpretation holding.

This brings us to the question of whether Villa's situation or circumstances, *i.e.*, his refusal to testify in this case, qualified him as "unavailable" under K.S.A. 60-459(g). The answer is yes. There was no practical distinction between Villa and any of the out-of-court declarants described in K.S.A. 60-459(g). His live testimony was just as inaccessible and just as necessary. His late-blooming reticence, likely generated by events that had transpired between Jefferson's preliminary hearing and trial, should not be permitted to undermine the court's truth-finding purpose.

The federal courts recognize the pragmatic aspect of our decision. The federal counterpart to K.S.A. 60-459(g)—Federal Rule of Evidence 804(a)(2)—states that an out-of-court declarant who "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so" qualifies as unavailable. Also, Professors Charles Alan Wright and Arthur R. Miller interpret the federal rule's use of the word "include" to introduce an illustrative list of unavailable witnesses rather than a definitive universe. See 30B Graham, Federal Practice and Procedure § 7072, p. 723 (4th Interim ed. 2006) ("[A]lthough not falling within any of the five illustrative alternatives, a child witness who is too frightened of the defendant, defense counsel, or the courtroom to be able and willing to testify, or who is found to be incompetent to testify, is similarly unavailable.").

## Conclusion

Because we hold that Villa qualified as an unavailable witness under K.S.A. 60-459(g), his preliminary hearing testimony was admissible under K.S.A. 60-460(c)(2)(B). The district court did not err, and we need not consider harmlessness.

The judgment of the Court of Appeals vacating the defendant's conviction is reversed. The judgment of the district court is affirmed.