NOT DESIGNATED FOR PUBLICATION

No. 111,074

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY L. JEFFERSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 18, 2016. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., SCHROEDER, J., and BURGESS, S.J.

*Per Curiam*:  Anthony L. Jefferson appeals the Sedgwick County District Court's judgment denying him habeas corpus relief under K.S.A. 60-1507. He claims that ineffective assistance of trial and appellate counsel undermined his right to a fair trial in his direct criminal proceedings. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of February 1, 2004, Jefferson and Jesse Villa got into a fight, resulting in a gunshot wound to Villa's ear. Details of the witnesses' various accounts of the fight are related in *State v. Jefferson*, 287 Kan. 28, 29-32, 194 P.3d 557

1

(2008). The State ultimately charged Jefferson with attempted first-degree murder or, alternatively, aggravated battery, attempted aggravated robbery, attempted kidnapping, and criminal possession of a firearm.

The regional public defender was appointed to represent Jefferson. Tim Frieden assigned himself the case and represented Jefferson through the preliminary examination. Villa testified at the preliminary hearing. Another attorney in the public defender's office was representing Villa on different criminal charges at the same time. Frieden knew about the representation but did not perceive a conflict until he conducted further investigation after the preliminary hearing. Frieden ultimately withdrew from the representation of Jefferson because of the conflict.

Just before trial commenced on May 24, 2005, Villa informed the prosecutor that he was unwilling to testify. The district court held a hearing to inquire into Villa's refusal and appointed counsel to discuss the ramifications to Villa in refusing to testify. Villa told the district court that he was refusing to testify and that no one was coercing him or threatening him. The district court found Villa in direct contempt of court and ordered Villa to serve 6 months in jail or until he purged the contempt by testifying. The State moved to have Villa declared unavailable under K.S.A. 60-459(g) and to admit Villa's preliminary examination testimony at trial. Alice Osburn, Jefferson's new trial counsel, argued against finding Villa unavailable and argued that the preliminary examination had not provided Jefferson with an adequate opportunity to cross-examine Villa due to the conflict of interest and incomplete discovery. The district court ultimately ruled Villa unavailable as a witness and permitted the use of his preliminary examination testimony at trial.

At trial, the nature of Villa's injuries were not substantially disputed. Three witnesses provided differing accounts as to the manner in which he received those injuries. Those witnesses were Jefferson, Jessica Vigil, who apparently had romantic

2

attachments to both Villa and Jefferson, and Villa, whose preliminary examination testimony was read into the record. Ultimately, the jury acquitted Jefferson of all counts except the aggravated battery charge.

Jefferson appealed his conviction to this court, challenging the admission of Villa's preliminary examination testimony at trial. *State v. Jefferson*, No. 95,049, 2007 WL 1041768 (Kan. App. 2007) (unpublished opinion). This court reversed the conviction, holding that the trial court erred in finding Villa was unavailable as a witness. This court also concluded that Villa's testimony was important enough that the error could not be deemed harmless. 2007 WL 1041768, at *2. The State petitioned the Kansas Supreme Court for review of the Court of Appeals' decision. The Kansas Supreme Court granted review and ultimately reversed this court, concluding that a witness who refused to testify was unavailable within the meaning of K.S.A. 60-459(g). *Jefferson*, 287 Kan. at 38-39.

A little under 1 year from the date the Kansas Supreme Court issued its *Jefferson* opinion Jefferson filed a motion under K.S.A. 60-1507 initiating this habeas corpus proceeding. In his motion, Jefferson alleged ineffective assistance of trial counsel in failing to cross-examine a key prosecution witness during the preliminary examination, by failing to object to the admission of preliminary examination testimony at trial, and by failing to conduct an adequate pretrial investigation. Jefferson also challenged the jury instruction on the presumption of intent, the imposition of the aggravated sentence within the applicable gridbox, and the district court's conclusion that Villa was unavailable for trial.

After Brian Hitchcock was appointed to represent Jefferson, a supplemental motion was filed challenging the use of Jefferson's statements to police before he had been informed of his constitutional rights. On June 23, 2010, the district court held an initial, nonevidentiary hearing to ascertain the colorable issues within Jefferson's motion.

Following arguments by counsel, the district court ruled that it would review the file and determine which issues, if any, would proceed to an evidentiary hearing.

Thereafter, the district court dismissed the case for lack of prosecution but then reinstated the case. On March 31, 2011, the district court ruled on Jefferson's motion. The district court dismissed his challenge to jury instructions, the sentencing issue, and the alleged error in declaring Villa unavailable. The district court permitted the case to proceed on Jefferson's allegations of ineffective assistance of counsel.

On April 1, 2013, the district court held a hearing on Jefferson's remaining claims. Jefferson, now represented by Carl Maughan, focused his inquiry on the admission of Villa's preliminary examination testimony and trial counsel's inability to conduct effective cross-examination of Villa during the preliminary examination or at trial. Following the hearing, the district court reserved judgment, giving the parties an opportunity to file trial briefs. Jefferson submitted a trial brief on May 23, 2013, raising entirely new allegations of ineffective assistance of counsel. The district court held another hearing to permit argument on August 9, 2013. Thereafter, the district court filed an order denying Jefferson's requested relief.

Jefferson filed a timely notice of appeal to this court. After several motions for extensions of time, Jefferson filed a motion with this court to stay briefing and remand the case to the district court for an evidentiary hearing regarding a notarized statement purportedly from Villa in which he recanted his previous preliminary examination testimony. This court granted the motion and remanded the case to the district court, while retaining jurisdiction over the case.

The district court held another hearing on December 22, 2014, to address Villa's alleged desire to recant his earlier testimony. Although Villa was subpoenaed and brought to the hearing, he invoked his privilege against self-incrimination regarding the

4

authorship of the notarized statement and refused to provide any compelling information. The district court took the matter under advisement. The district court filed its journal entry on December 30, 2014, extending no weight to Villa's purported desire to recant his testimony.

Out of an abundance of caution, Jefferson filed a supplemental notice of appeal from this later ruling by the district court.

## DID INEFFECTIVE ASSISTANCE OF COUNSEL DEPRIVE JEFFERSON OF THE RIGHT TO A FAIR TRIAL?

*Conflict of Interest*

Jefferson first contends that his right to the effective assistance of counsel was undermined by Frieden's conflict of interest at the time of the preliminary examination. The constitutional right to effective assistance of counsel includes the right to representation free from conflicts of interest. *Fuller v. State*, 303 Kan. ___, 363 P.3d 373, 382 (2015) (citing *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 [2014]). To prevail on a claim of ineffective assistance of counsel premised on a conflict of interest, a criminal defendant must first establish that his or her attorney actively represented conflicting interests. *Fuller*, 303 Kan. at ___, 363 P.3d at 382 (quting *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 [2002]; *State v. Galaviz*, 296 Kan. 168, 181, 291 P.3d 62 [2012]). An active conflict of interest is governed by Kansas Rules of Professional Conduct (KRPC). *State v. Jackson*, 52 Kan. App. 2d 125, 134, 363 P.3d 408 (2015). KRPC 1.7(a) (2015 Kan. Ct. R. Annot. 519) defines a current conflict of interest as the representation of a client that is directly adverse to another client or the representation of a client that creates a substantial risk that the representation of another client will be materially limited.

5

Clearly, the representation of a criminal defendant while simultaneously representing a key witness for the prosecution creates an active conflict of interest. See *Jackson*, 52 Kan. App. 2d at 135 (citing *State v. Jenkins*, 257 Kan. 1074, 1080, 898 P.2d 1121 [1995], *overruled on other grounds by Galaviz*, 296 Kan. 168, Syl. ¶ 7). However, in this case, Frieden was not simultaneously representing Jefferson and Villa. Rather, while Frieden was representing Jefferson, another attorney in the public defender's office was representing Villa. Nevertheless, the knowledge of confidential information obtained in the representation of Villa was imputed to Frieden under KRPC 1.10(a) (2015 Kan. Ct. R. Annot. 543) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 . . . ."). Accordingly, Frieden possessed an active conflict of interest in the representation of Jefferson.

Once a criminal defendant has established that his or her attorney actively represented conflicting interests, one of three subcategories of prejudice apply. If the conflict of interest involves concurrent representation, as in this case, and if the conflict is presented to the district court, which fails to inquire into the alleged conflict, prejudice is presumed and reversal is automatic. *Fuller*, 303 Kan. at ___, 363 P.3d at 382. At no time before or during the preliminary examination did Jefferson object to the potential conflict of interest; the conflict of interest was raised by Frieden after the preliminary examination. Where the conflict of interest involves concurrent representation but the conflict is not brought to the court's attention, the defendant must establish prejudice through a demonstration that the conflict of interest *actually affected* the adequacy of the representation. *Fuller*, 303 Kan. at ___, 363 P.3d at 382. Jefferson has failed to carry this additional burden.

In his appellate brief, Jefferson argues a detrimental effect caused by the conflict of interest because Frieden's conflict of interest foreclosed certain avenues of cross-examination of Villa. He then points out that the failure to pursue these lines of cross-

6

examination at the preliminary examination prejudiced his trial. Jefferson's argument does not survive careful scrutiny.

First, nothing in the record on appeal demonstrates that Frieden shied away from his examination of Villa at the preliminary examination because of a conflict of interest. In fact, during the hearing on Jefferson's habeas corpus motion, Frieden specifically testified that any conflict of interest that existed did not affect the manner in which he represented Jefferson at the preliminary examination. Frieden also noted that he knew that his office represented Villa but did not perceive the conflict of interest at the time of the preliminary examination. Clearly, Frieden did not possess the information necessary to impeach Villa at the time of the preliminary examination or the conflict would have been apparent. Jefferson presents no evidence to contradict Frieden's assertions about the conflict in representation.

Second, Jefferson focuses on the prejudice at trial. This focus is misdirected. In determining whether a conflict of interest adversely affected the representation, the court must focus on the criminal proceedings at issue during the representation; in this case, the preliminary examination. If Jefferson could establish that Frieden's representation at the preliminary examination was deficient, the court might be able to infer that the conflict of interest played a part in the deficiency, despite Frieden's assertions to the contrary. Whether Frieden provided deficient representation during the preliminary examination leads to Jefferson's next issue on appeal.

*Incomplete Investigation*

Jefferson claims that Frieden provided deficient representation at the preliminary examination by failing to conduct an adequate investigation and by failing to cross-examine Villa effectively. Though Jefferson raises these claims separately, they are clearly related. An incomplete investigation prior to the preliminary examination might

7

fail to reveal the impeachment evidence necessary to conduct the cross-examination Jefferson believes was warranted. That type of reasoning is not true in all cases.

> "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984).

See *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013).

Frieden candidly admitted that he had not completed his investigation at the time of the preliminary examination, though he indicated that he had begun his investigation. The appearance docket for the criminal trial indicates that the public defender's office was appointed to represent Jefferson on February 26, 2004. The preliminary examination occurred on June 30, 2004. While Frieden did not specify what information he possessed before the preliminary hearing, other than police reports, he confirmed that he did not know of Villa's prior crimes of dishonesty and did not possess the medical reports containing Villa's allegedly inconsistent statements. In response to Maughan's question whether he was prepared for trial at the time of the preliminary hearing, Frieden admitted that he had not completed the discovery necessary to be prepared for trial.

Jefferson contends that Frieden's truncated investigation was inadequate because it foreclosed impeachment of Villa, which in turn prejudiced Jefferson when the preliminary examination testimony was used at trial. Again, Jefferson's focus is slightly skewed. The ultimate detriment to Jefferson's defense caused by the admission of Villa's preliminary examination testimony at trial is not the standard by which Frieden's

8

representation is to be judged, in large part because it evaluates the representation with the benefit of hindsight. The proper standard by which legal representation is to be judged is from the perspective of an objectively reasonable attorney at the time the challenged representation was rendered. *Strickland*, 466 U.S. at 690-91; *Cheatham*, 296 Kan. at 431-32 ("[J]udicial scrutiny of counsel's performance must be highly deferential and must make every effort to 'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'").

The nature of a preliminary examination figures prominently into this analysis. See *Barber v. Page*, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968) ("A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial."). At a preliminary examination, the district court is required to evaluate the evidence in a light most favorable to the State. *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012) ("[T]he judge at a preliminary hearing must draw inferences favorable to the prosecution from the evidence presented and should not be concerned with sufficiency of the evidence to support a conviction."). Where conflicting statements or prior crimes merely cast doubt on the credibility of a witness, the district court must conclude that the State's evidence is sufficient to put before a jury which assesses that credibility.

Accordingly, it follows logically that impeachment of a particular witness is not the primary function of defense cross-examination during a preliminary examination. Rather, the defense function at a preliminary examination may be limited to discovery. See *Smith v. Konteh*, No. 1:05-CV-494, 2009 WL 799095, at *21 (W.D. Mich. 2009) (unpublished opinion) ("Most Michigan defense attorneys use the preliminary examination as a discovery tool and as an opportunity to pin down a witness's story, to prepare for impeachment at trial. Cross-examination strategy at the preliminary

9

examination is often exploratory and open-ended and does not resemble a trial cross-examination.").

Given this function, a defense attorney, exercising reasonable professional judgment, might choose to delay an independent investigation until discovering the State's evidence forming the basis for the criminal charges against the defendant. At the hearing on Jefferson's habeas corpus motion, Osburn indicated that she employed a similar practice in preparing for a preliminary examination. Osburn testified that she frequently lacks the evidence at the time of the preliminary examination that she will use at trial. She further opined that the preliminary examination is commonly used as a defense discovery tool and, therefore, a defense attorney often has not completed the defense investigation at the time of the preliminary examination.

The testimony represented the only evidence concerning the reasonableness of Frieden's investigation, and it supported the limitations Frieden placed on his investigation prior to the preliminary examination. Jefferson offered no other evidence as to what would constitute a reasonable investigation prior to a preliminary examination, apparently presuming that this court would conclude that anything short of a complete investigation constituted deficient representation. While some defense attorneys may try to conduct as thorough an investigation as possible before the preliminary examination, Jefferson cannot establish that a less than complete investigation constitutes objectively unreasonable professional assistance. See *Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

Since Jefferson has not established that Frieden's failure to conduct a thorough investigation fell below objective standards of reasonable professional assistance, he cannot demonstrate that Frieden's representation was constitutionally deficient in this respect.

10

*Incomplete Cross-examination*

Even if Jefferson could establish that reasonable professional legal assistance required more of an investigation before a preliminary examination than Frieden conducted, he still cannot demonstrate an adverse effect on the proceedings. There is no indication that Frieden would have been inclined to use the information obtained in an investigation at the preliminary examination. In this case, Jefferson identified two categories of evidence that might have been used to impeach Villa if the evidence had been discovered before the preliminary examination:  (1) Villa's prior crimes of dishonesty and (2) Villa's prior inconsistent statements.

When asked whether he would have impeached Villa with his prior crimes of dishonesty at the preliminary examination, Frieden indicated doubt, stating only that it was possible. Osburn provided a more definitive answer to a similar question, stating that defense attorneys frequently reserve impeachment evidence for trial. While Osburn admitted that she would have used the impeachment evidence in cross-examination of Villa at trial, she never indicated that she would have used the evidence to impeach Villa at the preliminary examination. Addressing what Frieden might have done if he had possessed the impeaching evidence is an academic exercise requiring a great deal of conjecture. The material point is that Jefferson cannot carry his considerable burden of establishing that Frieden's failure to cross-examine Villa with impeaching evidence constitutes deficient representation. See *Cheatham*, 296 Kan. at 432 ("We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance.").

Jefferson essentially concedes that Frieden's cross-examination of Villa during the preliminary examination was not deficient. In the opening statement of his argument on this issue, Jefferson writes: "While Mr. Frieden's cursory confrontation at the time of the preliminary hearing may have been sufficient for the purpose of a preliminary

11

hearing . . . ." The evaluation of Frieden's representation involves his cross-examination at the time of the preliminary hearing. See *Cheatham*, 296 Kan. at 431. In order to prevail on this claim, Jefferson seeks to establish a bright-line rule requiring defense counsel to conduct vigorous examinations of prosecution witnesses during a preliminary examination against the chance that the witness will become unavailable for trial. The current state of the law does not support Jefferson's position.

While the circumstance of a witness becoming unavailable for trial is clearly a possibility, it is not reasonable trial strategy to conduct a preliminary examination as if the possibility was a certainty in every case, revealing to the prosecution the full extent of the case for the defense. In this case, Frieden had no indication that Villa would refuse to testify at trial when he had cooperated with the prosecution up to the preliminary examination. Without the bright-line rule Jefferson proposes, he has failed to overcome the strong presumption that refraining from vigorous impeachment of a prosecution witness at preliminary examination falls within the wide parameters of reasonable professional assistance.

*Admission of the Preliminary Examination Testimony*

Next, Jefferson contends that Osburn provided deficient representation in failing to object to the admission of Villa's preliminary examination testimony on three constitutional grounds: (1) that its admission denied Jefferson the right to confront the witness; (2) that Jefferson was being denied the right to present a defense; and (3) that the admission of the preliminary examination testimony violated Jefferson's right to a trial by jury. Though raised as three issues, the crux of his argument boils down to a single challenge of defense counsel's failure to protect Jefferson's right to confrontation. Clearly, Jefferson presented a defense since he testified on his own behalf, and he was tried by a jury. Therefore, nothing in the admission of Villa's preliminary examination testimony completely abridged Jefferson's right to present a defense or right to a jury trial. To the

12

extent these rights may have been lessened by Jefferson's inability to cross-examine Villa at trial, the rights are duly protected by the right of confrontation. Accordingly, trial counsel's performance will be evaluated on her efforts to protect that right of confrontation.

To prevail on a claim that legal representation was so deficient that a criminal defendant's right to a fair trial was undermined, that criminal defendant must establish that (1) counsel's representation fell below an objective standard of reasonableness under the circumstances in which the representation was rendered and (2) the deficient representation was sufficiently serious to prejudice the right to a fair trial. *Strickland*, 466 U.S. at 687; *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012).

In reviewing counsel's representation, an appellate court must try to evaluate counsel's conduct from the perspective of counsel at the time the representation was rendered to reduce the distorting effects of hindsight. An appellate court will entertain a strong presumption that counsel's conduct fell within the wide range of adequate representation, and the movant bears the burden of overcoming that presumption and proving otherwise. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011); *Cheatham*, 296 Kan. at 431-32.

With respect to a showing of prejudice, the movant must convince the appellate court of a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome under the totality of the evidence presented to the judge or jury at trial. *Strickland*, 466 U.S. at 695-96; *Edgar*, 294 Kan. at 838.

Contrary to Jefferson's appellate contentions, Osburn did object to the admission of the preliminary examination testimony on the grounds that it foreclosed a reasonable

13

opportunity to cross-examine Villa. When the State moved for the admission of Villa's preliminary examination testimony, Osburn first objected that Villa was not unavailable within the meaning of K.S.A. 60-459(g). Osburn then argued that use of the preliminary examination transcript did not permit Jefferson an adequate opportunity to confront Villa's account.

"I asked Mr. Frieden to appear because he was counsel at that time. He doesn't know why he's here, because I just called him on his cell phone on the way in, but there's also an issue about the preliminary hearing in that defense counsel at the time had not had all discovery; specifically, medical reports; was unable to thoroughly cross-examine the victim in this matter, during the preliminary hearing. It was a preliminary hearing stage, and the most significant thing about that is Mr. Frieden is no longer representing Mr. Jefferson because at the time of the preliminary hearing, he was also Mr. Jesse Villa's attorney. So he made a decision there was a conflict of interest and was not able to proceed in representing Mr. Jefferson at the trial stage, because of his prior representation of Mr. Villa. So we have issues on the credibility or the—well, and I don't mean to say Mr. Frieden didn't do everything he could do. But at the time of the preliminary hearing, he had a conflict of interest; as well as not all the picture regarding all the information and all the discovery. So I'm asking the Court to find; one, it would not be admissible because the witness is not unavailable under the law; and secondly, if the Court is considering a preliminary hearing transcript, I would like to proffer testimony from Mr. Frieden about that he did have to conflict off the case and his limited discovery at the time of cross-examination and that he was unable to do a thorough examination of Mr. Villa; as well as the fact it was a preliminary hearing setting, which is much different, Your Honor, than a jury trial setting.

"I find it highly prejudicial to proceed only on a transcript, and I ask the Court to deny that request based on the law and based on all the circumstances before the Court."

The Confrontation Clause of the Sixth Amendment to the United States Constitution is not offended by the use of testimonial hearsay evidence when the testimony is provided by a witness declared unavailable for trial and the accused previously confronted the witness at any stage of the proceedings in the same case and

had the opportunity for cross-examination. See *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Reed*, 302 Kan. 227, 246, 352 P.3d 530 (2015). The opportunity for cross-examination requires only that the issues at trial were sufficiently similar to the issues at the prior hearing at which the witness testified that the adverse party had the right and the opportunity to cross-examine the witness with an interest and motive similar to that which the adverse party has in the action at which the prior testimony is offered. See *State v. Stano*, 284 Kan. 126, 144-45, 159 P.3d 931 (2007). The focus for determining whether a prior opportunity was adequate is on the defendant's interest and motive, not counsel's. See *Reed*, 302 Kan. at 247.

Clearly, by arguing that defense counsel at the preliminary examination had not completed discovery, had not yet received medical reports containing allegedly inconsistent statements, and had not discovered Villa's prior crimes of dishonesty, Osburn was challenging the similarity between the opportunity to cross-examine Villa at the preliminary examination with the opportunity to cross-examine him at trial. This argument goes directly to the test for admission of testimonial hearsay evidence under *Crawford*, which expounds upon a criminal defendant's rights under the Confrontation Clause of the Sixth Amendment. Consequently, Osburn adequately raised the issue before the district court. The Kansas Supreme Court apparently believed so as well in *State v. Jefferson*, 287 Kan. 28, 30-32, 194 P.3d 557 (2008) ("[Defense counsel] also challenged the sufficiency of the earlier cross-examination opportunity because Jefferson's attorney at the time of the preliminary hearing had a conflict." Jefferson "appealed on several issues but dropped his challenge to the district judge's decision on the Confrontation Clause question."). Her representation cannot be deemed deficient on this point.

*Lack of Appellate Argument on Inability to Confront*

As the flip side of the previous argument, Jefferson also contends that his appellate counsel, Shawn Minihan, provided deficient representation in arguing only that the trial court erred in finding Villa unavailable rather than also arguing the admission of Villa's testimony violated Jefferson's right to confront Villa.

To establish ineffective assistance of appellate counsel, Jefferson must satisfy elements of a modified *Strickland* test. First, he must establish that counsel's representation fell below an objective standard of reasonableness. In evaluating the reasonableness of counsel's representation, an appellate court must view the challenged conduct on the facts of the particular case at the time of the representation. A reviewing court entertains a strong presumption that counsel's representation was reasonable. *Miller v. State*, 298 Kan. 921, 930-31, 318 P.3d 155 (2014). Second, he must establish that, but for counsel's deficient performance, a reasonable probability exists that the outcome of the appeal would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 298 Kan. at 934.

Jefferson approaches this issue with the presumption that Minihan's failure to object to the admission of the preliminary examination testimony on constitutional grounds constitutes objectively substandard representation. He notes that Minihan did object to the admission of the preliminary examination testimony on the grounds that Villa was unavailable. But, the failure to raise an issue on appeal is never deemed deficient representation per se. See *Laymon v. State*, 280 Kan. 430, 439-40, 122 P.3d 326 (2005) ("Although the failure of direct appeal counsel to raise a particular issue on appeal 'is not, per se, to be equated with ineffective assistance of counsel,' [citation omitted], a lawyer's failure to foresee a change in the law may lead to 60-1507 relief if the failure was not objectively reasonable.").

16

In the hearing on his habeas corpus motion in this case, Jefferson called Minihan to testify. Minihan contended that he would have raised the constitutional issue if it had been raised in the district court, but he claimed that it had not been raised. As previously discussed, this statement does not accurately reflect the record. Osburn did object to the admission of the preliminary hearing transcript on constitutional grounds. Consequently, Minihan's failure to raise the constitutional challenge to the admission of Villa's testimony was not based upon objectively reasonable appellate strategy but upon a mistaken understanding of what occurred at trial. This constituted deficient representation. See *Miller*, 298 Kan. at 932 ("Rather, the uncontroverted evidence shows she simply did not notice the error. And although she admitted a belief that the prosecutorial misconduct argument she did raise was stronger than the jury instruction issue that she missed, nothing in the record suggests the decision to raise one issue but not the other was the product of strategy.").

In order to establish prejudice, however, Jefferson must also establish a reasonable probability that, if the issue had been raised, the court would have reversed his conviction and remanded the case for a new trial. As discussed, the Confrontation Clause permits testimonial hearsay if a witness becomes unavailable for trial and the defendant had an opportunity for cross-examination in the same proceeding. *Crawford*, 541 U.S. at 68; *Reed*, 302 Kan. at 246. The gist of Jefferson's argument is that he was denied the ability to cross-examine Villa *effectively*, due to incomplete discovery and the conflict of interest. In support, Jefferson cites a number of cases in which the defense's ability to cross-examine a witness was curtailed. See, *e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (holding that defendant lacked the opportunity to cross-examine a witness when the court foreclosed any and all inquiry into a subject that might have impeached the witness); *United States v. Montelongo*, 420 F.3d 1169, 1175 (10th Cir. 2005) (an erroneous evidentiary ruling that precludes legitimate cross-examination implicates the Sixth Amendment); *State v. Noah*, 284 Kan. 608, 617, 162 P.3d 799 (2007) (finding insufficient opportunity to cross-examine victim who

17

testified to some of the allegations on cross-examination but ultimately decided she could no longer continue the examination before defense counsel had finished cross-examination); *State v. Jackson*, 39 Kan. App. 2d 89, 97, 177 P.3d 419 (2008) (holding court-imposed restrictions on cross-examination under the rape shield laws violated defendant's confrontation rights).

Those cases are distinguishable—perhaps materially so—because the court or the witness foreclosed the defense attorney's ability to conduct the cross-examination he or she wished to pursue. Here, since Jefferson has not demonstrated that Frieden's conflict of interest impeded his representation or that the representation itself fell below objective standards of reasonableness, the question is whether the limitations of cross-examination inherent in a preliminary examination proceeding precludes the use of testimony produced at that proceeding at trial based upon the right of confrontation. Jefferson appears to believe so, but his position would mean that testimony given at a preliminary examination could not properly be admitted at trial whenever defense counsel failed to use any and all impeachment evidence that ultimately was available at trial. This standard would effectively eliminate the use of preliminary examination testimony at trial because defense lawyers routinely withhold impeachment evidence from cross-examination during a preliminary examination for strategy purposes.

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985); see also *Ohio v. Roberts*, 448 U.S. 56, 73 n.12, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) ("We need not consider whether defense counsel's questioning at the preliminary hearing surmounts some inevitably nebulous threshold of 'effectiveness.' In *Mancusi* [*v. Stubbs*, 408 U.S. 204, 214-15, 92 S. Ct. 2308, 33 L. Ed. 2d 293 (1972)], to be sure, the Court explored to some extent the adequacy of counsel's cross-examination at the earlier proceeding. That discussion, however, must be read in

18

light of the fact that the defendant's representation at the earlier proceeding, provided by counsel who had been appointed only four days prior thereto, already had been held to be ineffective. [Citation omitted.] Under those unusual circumstances, it was necessary to explore the character of the actual cross-examination to ensure that an adequate opportunity for full cross-examination had been afforded to the defendant. [Citation omitted.] We hold that in all but such extraordinary cases, no inquiry into 'effectiveness' is required. A holding that every case involving prior testimony requires such an inquiry would frustrate the principal objective of generally validating the prior-testimony exception in the first place—increasing certainty and consistency in the application of the Confrontation Clause."), *abrogated by Crawford*, 541 U.S. 36; *United States ex rel. Haywood v. Wolff*, 658 F.2d 455, 462 (7th Cir. 1981) ("Although the Court has found that there was in fact full and complete cross-examination at the preliminary hearing in those cases in which it has upheld the admission of such evidence at trial, [citations omitted], it has never said that either the opportunity to cross-examine, or the actual cross-examination conducted at the preliminary hearing, must be as full and complete as allowed at trial in order for testimony from such a proceeding to be admissible in the event the witness subsequently becomes unavailable."); *People v. Zapien*, 4 Cal. 4th 929, 975, 17 Cal. Rptr. 2d 122, 846 P.2d 704 (1993) ("Admission of the former testimony of an unavailable witness is permitted under [California Evidence Code] § 1291 and does not offend the confrontation clauses of the federal or state Constitutions—not because the opportunity to cross-examine the witness at the preliminary hearing is considered an exact substitute for the right of cross-examination at trial, [citation omitted] but because the interests of justice are deemed served by a balancing of the defendant's right to effective cross-examination against the public's interest in effective prosecution. [Citation omitted.]"); *Berkman v. State*, 976 N.E.2d 68, 77-78 (Ind. App. 2012) ("At no point in Barraza's deposition, the reading of which spanned ninety-four pages in the transcript, is there the slightest indication that Berkman was denied the opportunity to attempt to undermine Barraza or his testimony by asking any questions he saw fit. To the extent that Berkman did not do so, it was not because he was denied the opportunity. Under the

circumstances, we conclude that requirement for the opportunity to cross-examine was satisfied here.").

This court is not prepared to hold that the Confrontation Clause, as interpreted in *Crawford*, requires a full investigation of the defense prior to preliminary examination before testimony provided at the preliminary examination may be used at trial. Jefferson has failed to establish that Minihan's failure to object to the admission of Villa's prior testimony on constitutional grounds resulted in prejudice, *i.e.*, that the result of the appeal would have been different. Minihan's deficient representation did not result in prejudice to Jefferson under the facts of this case because a violation of a criminal defendant's confrontation right is subject to constitutional harmless error. See *Lilly v. Virginia*, 527 U.S. 116, 139-40, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999); *State v. Belone*, 295 Kan. 499, 504, 285 P.3d 378 (2012).

Under the constitutional harmless error test, a reviewing court must be persuaded beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. In other words, the records must establish no reasonable probability that the error affected the verdict. *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Villa testified that Jefferson demanded him to take his hands out of his pockets. When Villa apparently responded too slowly, Jefferson pulled out a gun and stated, "[Y]ou think this is a fucking game?" Jefferson made Villa place his hands on his head while Jefferson patted him down. Jefferson then hit Villa with the gun and then shot him in the ear. Jefferson ordered Villa to get into the car, but Villa resisted. The men wrestled; Villa escaped and ran away. If the jury had believed Villa's testimony wholesale, it should have convicted Jefferson of attempted robbery and attempted kidnapping or, at the very least, criminal possession of a firearm. Instead, the jury acquitted Jefferson of every charge other than aggravated battery.

20

Based on the nature of aggravated battery at the time Jefferson committed the act and on the evidence of Villa's injuries, which were produced at trial through uninvolved third parties, the jury could have disbelieved Villa's and Vigil's accounts of what happened and still convicted Jefferson. In 2004, K.S.A. 21-3414(a)(1)(A) defined the crime of aggravated battery that Jefferson was convicted of committing. As interpreted by the appellate courts, K.S.A. 21-3414(a)(1)(A) was a general intent crime, requiring the State to prove that Jefferson intentionally caused the physical contact that resulted in great bodily harm. See *State v. Hobbs*, 301 Kan. 203, 208-09, 340 P.3d 1179 (2015) (discussing judicial interpretations of prior versions of the aggravated battery statute); *State v. Makthepharak*, 276 Kan. 563, 572, 78 P.3d 412 (2003) (defining aggravated battery under K.S.A. 21-3414 as a general intent crime); *State v. Johnson*, 46 Kan. App. 2d 870, 880, 265 P.3d 585 (2011) (same); *Gross v. State*, 24 Kan. App. 2d 806, 808-09, 953 P.2d 689, *rev. denied* 264 Kan. 821 (1998) (same); *State v. Esher*, 22 Kan. App. 2d 779, 922 P.2d 1123, *rev. denied* 260 Kan. 997 (1996) (same).

Jefferson testified on his own behalf at trial. He testified that he went to the alley behind Villa's house for the purpose of fighting Villa. During the fight, Villa produced the gun, and the combatants struggled over the weapon. When they fell to the ground, the weapon discharged, shooting Villa in the ear. Without relying on Villa's or Vigil's accounts, Jefferson's testimony established the requisite general intent to cause physical contact. The jury's determination with respect to the degree of harm was not especially dependent on Villa's or Vigil's testimony. Villa's only testimony about the injury to his ear was to state that, when the injury occurred, he did not feel pain, only warmth. Vigil testified that she did not witness the shooting, turning her head away when Jefferson pointed the gun at Villa's head. Accordingly, the jury's finding that Villa received great bodily harm in the encounter was supported by other evidence that Jefferson has not challenged. Under these circumstances, any error in the admission of Villa's testimony had no effect on the result of Jefferson's trial. Any deficiency in Minihan's representation

21

during Jefferson's direct appeal does not demand the reversal of Jefferson's convictions for a new trial.

*Lack of Impeachment of Jessica Vigil*

In his sixth allegation of ineffective assistance of counsel, Jefferson contends that Osburn provided deficient representation in failing to impeach Vigil with evidence of crimes of dishonesty. The prior crime surfaced after the trial, and Osburn argued that Jefferson was entitled to a new trial in part because of the State's omission in disclosing the prior conviction. The record does not provide much information about the prior conviction, and its existence was not established by any certified journal entry. Instead, Osburn indicated that Jefferson informed her of Vigil's convictions for crimes of dishonesty. The State responded that its search of Vigil's criminal history failed to disclose any convictions for Vigil involving crimes of dishonesty. Osburn then indicated that Frieden's file that had been turned over to her contained a note indicating that Vigil possessed a conviction for nonperson burglary in 98 CR 412.

At the hearing on this motion, Jefferson questioned Osburn of her knowledge of this conviction prior to trial. Jefferson then admitted the list of Vigil's prior crimes that had been provided by the State. Although the exhibit does not appear to be included in the record on appeal, the list presumably failed to include any crimes of dishonesty. Jefferson then asked the court to take judicial notice of Reno County case No. 98 CR 412, which defense counsel understood to be a conviction for theft against Vigil.

Jefferson now contends that Osburn provided deficient representation in failing to discover this prior conviction and use it to impeach Vigil at trial. The court's ability to grant any relief to Jefferson on the basis of this argument is hindered by two significant obstacles. Most significantly, Jefferson has not provided any evidence that Vigil indeed possessed a prior conviction for nonperson burglary or theft. Jefferson's counsel states

22

that she possessed the prior conviction but fails to cite to any portion of the record that affirmatively establishes this fact. The district court took judicial notice of its files in Reno County case No. 98 CR 412, but nothing about the manner of the judicial notice affirmatively establishes that the case involved Vigil or resulted in a criminal conviction for burglary or theft. Review of the record has revealed no further proof of this alleged conviction.

Because Jefferson has failed to cite to any portion of the record that establishes the prior conviction, this court may presume Jefferson's statement of fact to lack evidentiary support. See Kansas Supreme Court Rule 6.02(a)(4) (2015 Kan. Ct. R. Annot. 41) ("The facts included in the statement must be keyed to the record on appeal by volume and page number. The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal.").

Moreover, even if this court assumes the existence of the prior conviction and that Osburn possessed sufficient evidence of the conviction to impeach Vigil at trial, Jefferson cannot establish that Osburn's failure to impeach Vigil with this prior conviction prejudiced his trial. As discussed in the preceding argument, the jury was not required to rely on Vigil's testimony to convict Jefferson of aggravated battery. The fact that Vigil's testimony was not further impeached with a 6-year-old conviction for burglary or theft would not have affected the ultimate verdict under the facts of this case.

*Disclosure of Exculpatory Evidence*

In a related issue, Jefferson contends that both Osburn and Minihan provided him deficient representation in failing to challenge the State's failure to disclose potentially exculpatory evidence in the form of Vigil's prior conviction for a crime of dishonesty.

The suppression by the State of evidence favorable to a criminal defendant upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. See *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). To establish a *Brady* violation, a criminal defendant seeking a new trial must establish:  (1) the evidence is favorable to the accused because it is exculpatory or because it permits impeachment; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the evidence was sufficiently material to establish prejudice. *State v. Williams*, 303 Kan. ___, 363 P.3d 1101, 1110 (2016).

Jefferson contends that Osburn failed to preserve the *Brady* issue. Osburn clearly challenged the State's failure to disclose Vigil's prior conviction in her request for a new trial. Osburn did not specifically reference *Brady*, but the issue was clearly preserved. While Osburn might have discovered the conviction before the end of the trial, an earlier discovery would have rendered any *Brady* violation harmless because Osburn would have been able to use the evidence to impeach Vigil. Therefore, it is unclear what deficiency Jefferson attributes to Osburn on this issue.

With respect to appellate counsel, Minihan clearly did not pursue the argument on appeal. But, failure to raise an issue on appeal is not alone tantamount to ineffective assistance of counsel. See *Laymon*, 280 Kan. at 439-40; *Baker v. State*, 243 Kan. 1, 10, 755 P.2d 493 (1988) ("Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit."). Jefferson presumes, but does not establish, that Minihan's rejection of the *Brady* issue on appeal was something other than the exercise of reasonable professional judgment. While Minihan was called as a witness in the hearing on Jefferson's habeas corpus motion, he was not questioned about his reasons for failing to pursue this issue on appeal.

There are at least two legitimate reasons Minihan might have reasonably rejected the *Brady* issue. First, from the record on appeal, the fact of the prior conviction was not clearly established. Second, Vigil's testimony was not strong and, based on the jury's verdict, the lack of additional impeachment material was likely harmless error. Since Jefferson failed to make a record detailing counsel's reasons for failing to raise the *Brady* issue on appeal, he has failed to surmount the strong presumption that counsel's representation was the product of reasonable professional assistance. See *Miller*, 298 Kan. at 931.

*Failure to Deny Perjury*

Finally, Jefferson contends that Osburn provided deficient representation by failing to present to the jury Villa's unwillingness to deny that he had committed perjury at the preliminary examination. Before trial, the State brought Villa before the court based on his representation that he would not testify. When the State inquired into the reasons for his refusal, Villa refused to provide an explanation, stating, "I have no comment," to both the State's questions about Villa's lack of respect for the court system and Villa's commission of perjury at the preliminary hearing. When the district court ordered Villa to explain why he was refusing to testify, Villa responded, "I just don't want to." The court then appointed Villa counsel before conducting additional inquiry. When the hearing continued, Villa indicated that no one was forcing him to refuse to testify or that he was being threatened to do so but he could not testify.

While Villa did not affirmatively disclaim perjury as the basis for refusing to testify, he also did not affirmatively acknowledge that his preliminary examination testimony was false. Accordingly, Osburn could not effectively impeach Villa's preliminary examination testimony on the basis of perjury. Had she brought out the fact that Villa had not disclaimed perjury, the State could have brought out the fact that he did not specifically admit to perjury and also refused comment on a general disrespect for the

25

court system. As this evidence would not have sufficiently assisted the jury to divine Villa's reasons for refusing to testify, it was not deficient representation to fail to elicit this evidence at trial. This is especially true in light of Vigil's testimony, painting Jefferson as a violent person of whom Vigil was terrified. The jury might easily have interpreted Villa's unwillingness to testify as fear, despite his protestations to the contrary. The jury was able to view Jefferson, who according to the record was a tall, extremely physically fit individual. Jefferson accepted football and wrestling scholarships from Clemson University, an NCAA Division I school.

Under the circumstances, Osburn did not provide deficient representation by failing to attempt to impeach Villa's testimony with an inference that his preliminary examination testimony was perjured. Even if it was deficient representation, Jefferson cannot establish prejudice for all the reasons previously discussed. The jury could easily have convicted him of aggravated battery without relying on the testimony of either Villa or Vigil.

Affirmed.