NOT DESIGNATED FOR PUBLICATION

No. 114,216

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER TOBIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed February 3, 2017. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*James Crux*, legal intern, *Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.


*Per Curiam*:  Defendant Tyler Tobin contends evidence that he had gambled at a St. Louis casino with a business associate impermissibly tainted jury verdicts in Johnson County District Court finding him guilty of two counts of felony theft. Although the evidence should not have been admitted—it was too vague and indefinite to be relevant in establishing motive—the error was harmless given the compelling admissible evidence of Tobin's guilt. We, therefore, affirm the judgment.

1

Tobin worked for his uncle at Tobin Lawn and Landscape in the spring of 2012 as a sales representative. Among other services, the company replaced residential guttering and regularly subcontracted that work to Preferred Roofing. Tobin convinced two homeowners in Johnson County to hire Tobin Lawn and Landscape to replace their roofs. The contracts were drawn up using the Tobin Lawn and Landscape name, but the paperwork called for the homeowners to pay Tobin personally. Tobin then contacted Kevin Cindrich, Preferred Roofing's owner, to have that company do the roofing work. Cindrich testified at trial that he considered Tobin to be an independent sales representative for Preferred Roofing. Tobin had done some other sales work for Preferred Roofing, and the company dispatched him to St. Louis later that year to solicit roofing jobs in the wake of a major storm there.

The Johnson County homeowners, consistent with the contracts they signed, paid Tobin personally for the roofing work. On one job, the homeowner wrote two checks payable to Tobin for a total amount of $41,677.48. Tobin negotiated those checks at a branch of the homeowner's bank and obtained cashier's checks totaling $39,000 and the balance in cash. Tobin then negotiated the cashier's checks at another branch of the bank for cash. On the other job, he received a check for $23,400 that he negotiated for $8,400 in cash and a cashier's check for $15,000. None of the money ever made its way to Tobin Lawn and Landscape or Preferred Roofing. In hindsight, the homeowners thought it odd the contracts permitted payment to Tobin personally and that Tobin requested checks drawn that way.

As 2012 wore on, Cindrich pressed Tobin for payment on the Johnson County jobs and was met with various excuses, such as purported problems one of the homeowners had in getting a payment from his insurance company. Cindrich also found Tobin's work habits in St. Louis to be deteriorating—he regularly missed appointments and became

difficult to reach by phone. Eventually, Cindrich looked into the two Johnson County roofing jobs and learned that the homeowners had paid Tobin personally in conformity with contracts that were ostensibly made with Tobin Lawn and Landscape rather than with Preferred Roofing. Cindrich turned the information he developed over to law enforcement authorities.

The Johnson County District Attorney's office charged Tobin with one count of theft of between $25,000 and $100,000, a severity level 7 nonperson felony, and one count of theft of between $1,000 and $25,000, a severity level 9 nonperson felony. During the 2-day jury trial in May 2014, Tobin's uncle testified that he never authorized Tobin to contract with the homeowners for the roofing work. He also told the jury Tobin Lawn and Landscape contracts did not permit the contracting party to pay a sales representative personally for work. Cindrich testified regarding his work relationship with Tobin and his understanding about the Johnson County roofing jobs.

Pertinent to the issue on appeal, the prosecutor asked Cindrich about his interactions with Tobin while both of them were in St. Louis. Cindrich testified that he would stay at a hotel and casino there and often invited his employees to gamble with him. The line of questioning then drew an objection from Tobin's lawyer based on lack of relevance and undue prejudice. At a bench conference, the district court suggested evidence of Tobin's gambling could be offered to show motive for the thefts. The prosecutor agreed. Tobin's lawyer characterized the anticipated testimony as showing only that Tobin had sometimes gambled at a casino. The district court overruled the objection without asking the prosecutor for a more detailed proffer of the evidence.

Cindrich then testified that only Tobin accepted the invitation. He told the jury that to his "understanding" Tobin gambled "frequently." But he did not elaborate on the basis for that understanding or say how often the two of them had gambled. Cindrich agreed with the prosecutor that he would "describe [Tobin's] gambling as aggressive." Cindrich

3

said, "I never saw him walk away a winner." The prosecutor elicited no other information from Cindrich or any other witness about Tobin's gambling. Tobin's lawyer did not address the issue while cross-examining Cindrich. In closing argument, the prosecutor specifically referred to Tobin's gambling in explaining the crimes to the jury.

Tobin testified in his own defense. He told the jury he had no intention of keeping the money from the Johnson County roofing jobs and the failure to get the homeowners' payments to Preferred Roofing was the result of lax business practices. Neither the prosecutor nor his own lawyer asked Tobin about his gambling. The jury convicted Tobin of both counts of theft.

At a later hearing, the district court sentenced Tobin to a controlling prison term of 22 months and placed him on probation for 24 months, consistent with the sentencing guidelines. Tobin had a previous felony theft conviction and several unscored traffic and misdemeanor offenses, so he was presumptively eligible for probation. The district court also ordered Tobin to pay about $58,000 in restitution. Tobin has timely appealed.

LEGAL ANALYSIS

On appeal, Tobin contends the convictions should be set aside because Cindrich's testimony about his gambling was erroneously admitted during the trial and, thus, impermissibly caused the jury to return guilty verdicts. Although we agree the testimony should not have been allowed, we cannot say the verdicts were contaminated as a result. The other evidence, as we explain, amply supported the findings of guilt and rendered the error harmless.

A defendant's motive is typically relevant in a criminal case, although it is not, strictly speaking, an element of most crimes. The State may, therefore, offer evidence proving motive. *State v. Carapezza*, 286 Kan. 992, 999, 191 P.3d 256 (2008). Motive

4

refs to the reason a person commits a crime or what the criminal hopes to accomplish. *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009); *Carapezza*, 286 Kan. at 999 (motive "explain[s] why the defendant may have committed the crime"). Motive differs from specific or general criminal intent in that intent addresses the perpetrator's thought process in acting deliberately and purposefully, as opposed to carelessly or accidently, in carrying out the crime. See K.S.A. 2015 Supp. 21-5202(h) (defining acting "intentionally" or "with intent" for purposes of criminal code); K.S.A. 2015 Supp. 21-5202(i) (defining acting "knowingly" or "with knowledge"); *Carapezza*, 286 Kan. at 999.

Proof of motive need not reveal other crimes, though it may. For example, one spouse may have killed the other for financial gain. Financial gain in and of itself is not illegal. Nor is buying an insurance policy on one's spouse. But if it precedes the spouse's mysterious death by days, motive begins to loom. See *State v. Johnson-Howell*, 255 Kan. 928, 952, 881 P.2d 1288 (1994) (financial gain from insurance noted as motive for murder in conviction based on circumstantial evidence), *overruled on other grounds State v. Jefferson*, 287 Kan. 28, 38, 194 P.3d 557 (2008); *Boorigie v. State*, No. 101,030, 2010 WL 2816794, at *2 (Kan. App. 2010) (unpublished opinion). In *Carapezza*, the State properly introduced evidence of the defendant's active drug addiction to show motive for financial gain and, in turn, her participation in an aggravated robbery. 286 Kan. at 1000. If the motive evidence discloses criminal behavior apart from the charged offenses, K.S.A. 2015 Supp. 60-455 governs its admission. If not, then the general rules of relevance, materiality, and undue prejudice apply.

In short, the prosecutor was entitled to present *relevant* evidence showing a motive or reason Tobin stole the money that should have gone to Preferred Roofing. But was Cindrich's abbreviated testimony about Tobin's gambling relevant? Relevant evidence is that which has "any tendency in reason to prove any material fact." K.S.A. 60-401(b); see also *Carapezza*, 286 Kan. at 997 (relevance depends upon "a material or logical

5

connection" between demonstrated fact and the inference the proponent intends be drawn). The Kansas Supreme Court has identified dual components to relevance:

> "[T]here are two elements of relevancy: a materiality element and a probative element. Materiality addresses whether a fact has a legitimate and effective bearing on the decision of the case and is in dispute. Evidence is probative if it has any tendency in reason to prove a fact. An appellate court reviews a district court's determination that evidence is probative for abuse of discretion whereas the district court's decision regarding materiality is reviewed de novo." *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 1, 303 P.3d 680 (2013).

Cindrich's testimony proved only that Tobin gambled at a casino more than once and lost money doing so. The prosecutor wanted the jurors to infer Tobin stole tens of thousands of dollars because he gambled. But we don't know how often Tobin gambled, what game or games he played, how much he wagered, or how much he lost. Those unknowns entail precisely the information that *could* make the more general known—that Tobin gambled and lost—material in this case. Without that information, the known lacks materiality in proving motive in that it fails to forge a "legitimate" basis to conclude Tobin stole so he could gamble. For all the evidence shows, Tobin and Cindrich sat at a $5 blackjack table for a little while on a couple of occasions. And Tobin left poorer than he started, as do most gamblers. Cindrich's observation that Tobin bet "aggressively" adds nothing. Without necessary (and missing) detail, that might mean only that Tobin routinely chose to hit a hard 17, which would be both aggressive and stupid blackjack strategy.

Had the evidence shown Tobin walked away leaving $10,000 or $15,000 a night at the gaming tables, the circumstances would support an inference he needed a large amount of money to support his gambling. Tobin had no obvious legitimate source of income to do so. That, in turn, fairly could supply a motive for the thefts. Evidence Tobin compulsively gambled in 2012 and had delinquent debts or substantial loans would

6

likewise tend to establish motive. See *Carapezza*, 286 Kan. at 1001 (evidence of defendant's need "to purchase [illegal] drugs to fuel her addiction" properly admitted to prove motive for her participation in robbery).

But the evidentiary chain the prosecutor wanted the jurors to forge first required they infer Tobin lost a significant amount of money gambling. The evidence, however, doesn't permit that inference. The prosecutor's desired inference is no more than ungrounded speculation. The next link—large gambling losses impelled Tobin to steal— impermissibly draws another inference from the first speculative one. The required inference stacking exceeds what the rules of evidence permit. A factfinder may not infer a circumstance based solely on a predicate circumstance or speculation rather than on evidence. See *State v. Rice*, 261 Kan. 567, 586, 932 P.2d 981 (1997) ("'Presumptions and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference.'") (quoting *State v. Doyle*, 201 Kan. 469, 488, 441 P.2d 846 [1968]); *Bradshaw v. Smith*, No. 113,922, 2016 WL 4413956, at *4 (Kan. App. 2016) (unpublished opinion) (impermissible inference stacking when "[t]he ultimate inference depends entirely on the accuracy of the precedent inference and is itself without any direct or circumstantial support in the evidentiary record"); *State v. Gordon*, No. 105,845, 2012 WL 2620554, at *2 (Kan. App. 2012) (unpublished opinion) ("A reasonable inference may be properly drawn from a fact supported in the evidence. But another, more remote inference may not then be based on that inference alone."), *rev. denied* 297 Kan. 1250 (2013).

The court in *Gordon* offered this hypothetical of impermissible inference stacking, playing off an example we have already mentioned:

> "Thus, in a murder case, the State could prove the defendant was deeply in debt and then prove he purchased a $1 million life insurance policy on his wife a week before she drowned under suspicious circumstances. A proper inference would be that the defendant

7

killed his wife for the insurance money. But the State could not succeed without proof of the purchase of the insurance policy. That is, it could not ask the factfinder to infer that the defendant purchased insurance because he was in debt and, in turn, to infer he killed his wife to collect on the unproven insurance policy given the suspicious circumstances of her death." 2012 WL 2620554, at *2.

Less gothically and more apropos here, Cindrich could not have testified that he occasionally dined with Tobin in the St. Louis hotel's upscale restaurant and Tobin invariably ordered bottles of French wine. Treating that observation as evidence of motive first trades on an unsupported inference the wine must have been costly—presumably because it came from France—and then speculates that Tobin stole to support his taste for expensive wine. The gambling testimony created the same impermissibly speculative sequencing of unsupported inferences and, therefore, was not material to proof of motive. For that reason, the testimony was inadmissible, and the district court erred in ruling otherwise.

We also conclude Cindrich's testimony was not probative of Tobin's motive. We assess a district court's determination to admit tendered evidence as probative using an abuse of discretion standard. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Here, the district court overruled the objection to Cindrich's testimony despite a fair characterization by Tobin's lawyer that it would merely show Cindrich and Tobin gambled together at a casino. The district court did not solicit a proffer from the prosecutor before allowing the testimony. The ruling, therefore, was made without an appreciation of the conclusory and speculative nature of the testimony—in ignorance of

8

the facts. The testimony was not probative of motive for essentially the same reasons it lacked materiality on the point.

But the wrongful admission of evidence does not, in and of itself, require reversal of a criminal conviction. A defendant is entitled to relief only if the evidence deprived him or her of a fair trial. Otherwise, the error may be excused as harmless. See *State v. Torres*, 294 Kan. 135, 143, 273 P.3d 729 (2012). In considering the impact of this error, we are guided by Kansas Supreme Court authority recognizing that trial defects that do not implicate constitutional rights, such as the erroneous admission of evidence, may be considered harmless if there is no reasonable probability they affected the outcome of the case. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012) (A nonconstitutional error may be declared harmless if "there is no reasonable probability that such error affected the outcome of the trial in light of the entire record."); *Ward*, 292 Kan. 541, Syl. ¶ 6. The State, as the party benefiting from the error, bears the burden of proving harmlessness. *McCullough*, 293 Kan. 970, Syl. ¶ 9.

We think there was little to no chance the gambling testimony affected the outcome in the sense it prompted the jury to convict Tobin or tilted an otherwise close case in favor of the State. Cindrich's testimony about Tobin's gambling was quite brief. Of course, its brevity, and the concomitant lack of detail, was its vice. But the testimony was not a prominent part of the trial evidence. Although the prosecutor mentioned the evidence once in closing argument, he did not harp on it as decisive.

At least as important to our analysis, the properly admitted evidence against Tobin was strong. Tobin's machinations to obtain checks from the homeowners payable to him personally and to convert them to cash through serial bank transactions has the unmistakable look of a criminal enterprise aimed at defrauding Preferred Roofing of money due for its work. Tobin's explanation to the jury of sloppy business practices comes across as improbable on its face. The story offered no reasonable explanation for

Tobin's failure to tender the payments to Preferred Roofing and did not effectively account for the false reasons he apparently offered to Cindrich for never turning over the money. Those flaws are inconsistent with mere sloppiness and point rather directly to a scheme crafted to defraud. Accordingly, we conclude the evidentiary error to be harmless, taking account of the totality of the circumstances.

Tobin also challenges his sentence on the grounds the district court improperly considered his criminal history. He contends that the district court's use of his past convictions in determining an appropriate sentence impairs his constitutional rights because the fact of those convictions was not determined beyond a reasonable doubt by the jury. Tobin relies on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to support that proposition. He also acknowledges the Kansas Supreme Court has rejected the argument and has consistently found the State's current sentencing regimen conforms to the Sixth and Fourteenth Amendments to the United States Constitution with respect to the use of a defendant's past convictions in determining a presumptive statutory punishment. *State v. Fischer*, 288 Kan. 470, Syl. ¶ 4, 203 P.3d 1269 (2009); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). We, therefore, decline Todd's invitation to rule otherwise, especially in light of the Kansas Supreme Court's continuing affirmation of *Ivory*. *State v. Pribble*, 304 Kan. 824, 838-39, 375 P.3d 966 (2016); *State v. Hall*, 298 Kan. 978, 991, 319 P.3d 506 (2014).

Affirmed.